**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                     **Plaintiff,**

   **vs.**                                                **1:16-cv-0669
                                                          (MAD/DJS)**

**J. FELIX STREVELL, NICOLE STREVELL
CHILDROSE,**

                     **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**U.S. DEPARTMENT OF JUSTICE**        **CATHLEEN B. CLARK, AUSA**
445 Broadway
James T. Foley Courthouse
Albany, New York 12201
Attorney for Plaintiff

**J. FELIX STREVELL**
2591 Phillips Road
Castleton, New York 12033
Defendant, *pro se*

**ROEMER, WALLENS LAW FIRM**        **MATTHEW J. KELLY, ESQ.**
13 Columbia Circle
Albany, New York 12203
Attorney for Defendant Childrose

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On June 14, 2016, the Government filed the complaint in this action alleging that

Defendant J. Felix Strevell fraudulently transferred assets to his daughter, Defendant Nicole

Strevell Childrose, in violation of the Federal Debt Collection Procedure Act ("FDCPA"), 28

U.S.C. § 3304. *See* Dkt. No. 1. Presently before the Court is the Government's motion for summary judgment. *See* Dkt. No. 45. For the following reasons, the motion is granted.

## II. BACKGROUND

In 1999, Defendant Strevell was Deputy Secretary of State for Business and Licensing at the New York Department of State. *See* Dkt. No. 45-2 at ¶ 5. Through that position, Defendant Strevell became the Executive Director of the Institute for Entrepreneurship and a related nonprofit corporation. *See id.* at ¶¶ 6-12. Between 1998 and 2001, those organizations raised approximately $8 million from federal and state grants, as well as donations from state agencies, corporations, and individuals. *See id.* at ¶ 13. Defendant Strevell admitted in a related criminal case to using his position "to fraudulently obtain funds for himself and his family," including paying for a family trip to Disney World. *See id.* at ¶¶ 30-31. On March 27, 2009, a judgment was entered against Defendant Strevell in his criminal case in the Northern District of New York. *See id.* at ¶ 32. The judgment required Defendant Strevell to pay $111,500 in restitution to New York State, and to pay the full amount immediately if at any time he had the resources to do so. *See id.* at ¶ 33. As of February 2, 2018, $85,706.61 of Defendant Strevell's restitution judgment remained outstanding. *See* Dkt. No. 45-3 at 21.

On May 12, 2013, Defendant Strevell provided the United State Attorney's Office with a certified financial statement. *See* Dkt. No. 45-2 at ¶ 52. Although the statement required Defendant Strevell to list all of his assets—including each of his bank accounts—Defendant Strevell failed to list three separate commercial bank accounts that he maintained at Pioneer Bank. *See id.* at ¶¶ 54. At a December 17, 2014 deposition, Defendant Strevell testified that he did not provide any financial support to his daughter, that he gave her only "a couple thousand dollars" to help pay for her wedding, and that he had no assets to satisfy the restitution judgment.

*See id.* at ¶¶ 57-60. Defendant Strevell was later indicted by a federal grand jury and charged with five separate counts of false declarations under oath based on false statements he made at that deposition. *See id.* at ¶ 61.

On November 4, 2016, Defendant Strevell pleaded guilty to all five counts in the indictment. *See id.* at ¶ 64. In his plea agreement, Defendant Strevell admitted to giving his daughter, Defendant Childrose, more than $30,000 for wedding expenses, and admitted that he "paid for substantially all of his daughter's wedding expenses." *See id.* at ¶ 66. In its statement of material facts ("SMF"), the Government asserts that Defendant Strevell transferred a total of $159,046.00 to Defendant Childrose between September 2012 and June 2014. *See id.* at ¶ 67. The Government provides 159 exhibits detailing transfers from Defendant Strevell to Defendant Childrose during that time period. *See* Dkt. Nos. 45-4, 45-5. Defendant Childrose filed a response to the Government's SMF denying that the total amount transferred was $159,046.00. *See* Dkt. No. 47 at ¶ 67.

On June 14, 2016, the Government filed the complaint in this action seeking to set aside the transfers to Defendant Childrose pursuant to the FDCPA and to enter judgment against Defendants Strevell and Childrose, jointly and severally, for the value of the money transferred to Defendant Childrose to the extent necessary to satisfy Defendant Strevell's debt to the United States. *See* Dkt. No. 45 at 20. Presently before the Court is the Government's motion for summary judgment, which argues that the transfers were fraudulent under two different provisions of the FDCPA, and that the Government is entitled to summary judgment under both theories of liability. *See id.* The Government also argues that by failing to respond to its request for admissions, Defendants effectively admitted that the transfers were fraudulent. Because the

3

Court finds as a matter of law that the transfers were fraudulent under the FDCPA, the Court will not address the Government's argument regarding the request for admissions.

Defendant Strevell did not file an opposition to the motion for summary judgment. He did, however, write a letter asking the Court to "respectfully consider not putting a judgment on [Defendant Childrose]" because Defendant Strevell is "making very large strides" in paying the restitution. *See* Dkt. No. 50 at 1. Defendant Childrose filed an opposition that included a response to the Government's SMF, an attorney affidavit, and an affidavit by Defendant Childrose. *See* Dkt. Nos. 47, 47-1, 47-2. But Defendant Childrose's opposition does not engage with the legal arguments in the Government's motion; she merely argues that the Court should not "punish the daughter for the sins of the father." Dkt. No. 47-1 at ¶ 3. The Government submitted a reply. *See* Dkt. No. 48.

### III. DISCUSSION

**A.     Legal Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the

4

nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment. Summary judgment may also be granted against any part of the remedy sought by the opposing party's claims. *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010).

**B.      Statement of Material Facts**

Local Rule 7.1(a)(3) sets forth the Northern District's rules for summary judgment motions. The rule requires the moving party to submit a statement of material facts ("SMF") "about which the moving party contends there exists no genuine issue," and each fact asserted must include a specific citation to the record. L.R. 7.1(a)(3). The opposing party must file a response to the SMF admitting or denying each of the movant's factual assertions and "[e]ach denial shall set forth a specific citation to the record where the factual issue arises." *Id.* The Local Rules specifically state that the "Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

5

In this case, the Government filed an SMF, and Defendant Childrose submitted a response to the SMF. *See* Dkt. Nos. 45-2, 47. Defendant Childrose's response denies several of the Government's factual assertions, but Defendant Childrose almost entirely fails to cite to the record identifying where the factual issue arises. To the extent that Defendant Childrose denies properly supported factual assertions without citing to the record, the Court deems those assertions admitted. *See N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648 (2d Cir. 2005) (upholding the district court's decision to deem admitted any facts properly set forth in the movant's SMF that were not specifically controverted by the nonmovant's response); *Meaney v. CHS Aquisition Corp.*, 103 F. Supp. 2d 104, 109-10 (N.D.N.Y. 2000) ("Because the nonmovant . . . has failed to comply with the requirements of L.R. 7.1(a)(3), and to controvert with specificity the facts set forth in [the movant's] Statement of Material Facts, the Court will deem admitted as uncontroverted all the facts properly set forth").

In particular, the Government asserts in its SMF that, between September 2012 and June 2014, Defendant Strevell transferred a total of $159,046.00 to Defendant Childrose. *See* Dkt. No. 45-2 at ¶ 67. The Government's SMF goes on to list 159 instances of Defendant Strevell withdrawing cash from his business accounts and later depositing that cash into Defendant Childrose's account. The sum of those 159 transfers is equal to $159,046.00—the total amount that the Government asserts was transferred from Defendant Strevell to Defendant Childrose during the time in question. Each of the transfers listed in the SMF is supported by a citation to the record, and for each transfer the Government asserts that Defendant Strevell did not receive anything of reasonably equivalent value in exchange. *See id.* at ¶¶ 69-387. In her response to the Government's SMF, Defendant Childrose "dispute[s] that the total transferred was $159,046.00," but that denial does not include any citation to the record. Dkt. No. 47 at ¶ 67. Additionally,

6

Defendant Childrose does not dispute any of the individual transfers listed in the Government's SMF, nor does she dispute the assertions that Defendant Strevell did not receive anything of reasonably equivalent value in exchange for those transfers. Therefore, the Court deems the Government's assertion that Defendant Strevell transferred a total of $159,046.00 to Defendant Childrose to be admitted.

**C.     Fraudulent Transfer**

The FDCPA "provides the exclusive civil procedures for the United States to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1). "The FDCPA includes provisions that allow avoidance of transfers based on *actual fraud* and *constructive fraud*." *United States v. Schippers*, 982 F. Supp. 2d 948, 964 (S.D.N.Y. 2013) (emphasis in original). In this case, the Government argues that the transfers were actually fraudulent in violation of 28 U.S.C. § 3304(b)(1)(B) and constructively fraudulent in violation of 28 U.S.C. § 3304(b)(1)(B)(ii).

*1. Actual Fraud - 28 U.S.C. § 3304(b)(1)(A)*

Section 3304(b)(1)(A) of the FDCPA provides that a transfer is fraudulent if a debtor makes a transfer "with actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A). The statute goes on to provide a non-exhaustive list of eleven factors that a court may consider in determining actual intent, including whether:

> the transfer was to an "insider"; . . . the transfer occurred shortly
> before or shortly after a substantial debt was incurred; the transfer
> was of substantially all of the debtor's assets; and the value of the
> consideration received by the debtor was reasonably equivalent to
> the value of the property transferred.

*United States v. Preston*, 123 F. Supp. 3d 93, 102 (D.D.C. 2015) (citing 28 U.S.C. § 3304(b)(2)).

The relevant factors in this case indicate that Defendant Strevell transferred assets to Defendant Childrose with the intent to hinder and delay the repayment of his debt to the United

7

States. First, under the FDCPA, the definition of an "insider" includes someone who is a relative of the debtor. *See* 28 U.S.C. § 3301(5)(A)(i). As Defendant Strevell's daughter, Defendant Childrose clearly qualifies as an insider. Second, the transfers took place in the years after a $111,500 judgment was entered against Defendant Strevell. Third, the transfer left Defendant Strevell without sufficient assets to pay the judgment against him, as evidenced by the fact that he stopped making payments on his mortgage, *see* Dkt. No. 45-19 at 57, his business failed in June 2014, *see* Dkt. No. 45-30 at 18-19, and he paid only a small percentage of the judgment against him. Indeed, a financial disclosure submitted by Defendant Strevell in December 2014 indicated that his only bank account was a checking account with a balance of $655.00. *See* Dkt. No. 45-31 at 2.

Fourth, Defendant Strevell did not receive anything of "reasonably equivalent to the value of the property transferred." 28 U.S.C. § 3304(b)(2)(H). "Reasonably equivalent value means that 'the debtor has received value that is substantially comparable to the worth of the transferred property.'" *United States v. Loftis*, 607 F.3d 173, 177 (5th Cir. 2010) (quoting *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 548 (1994)). Defendant Childrose's affidavit suggests that Defendant Strevell may have received equivalent value because she used the money for "household expenditures." Dkt. No. 47-2 at ¶ 5. But Defendant Childrose testified at a February 25, 2015 deposition that she lived with her husband—not her father or her extended family—during the time period in question. *See* Dkt. No. 45-12 at 19. There is no exception to the FDCPA's definition of reasonably equivalent value for paying the expenses of an adult, married child living separately from the debtor. *See United States v. Schmidt*, No. 08-CV-286, 2009 WL 4723328, *3 (E.D. La. Dec. 4, 2009); *see also United States v. Moore*, 156 F. Supp. 2d 238, 246 n.2 (D. Conn. 2001) ("Any intangible, emotional benefit is not included within the meaning of reasonable

8

equivalent value, because 'within the meaning of the statute, value means economic value'") (quoting *Vancampen v. United States*, No. 95-CV-1436, 1997 WL 873537, *4 (D. Kan. July 9, 1997)).

Finally, the circumstances of this case bear several other badges of fraud that allow the Court to infer fraudulent intent. The money that Defendant Strevell transferred to Defendant Childrose came from business accounts that Defendant Strevell omitted from his financial disclosure statement. And rather than writing a check or using a wire transfer, Defendant Strevell withdrew money from his business accounts and deposited cash into Defendant Childrose's account, which was done to disguise the source of the deposits. *See* Dkt. No. 45-2 at ¶ 388. Eventually, Defendant Strevell pleaded guilty to lying under oath about the nature of the transfers, which strongly indicates that Defendant Strevell acted "with actual intent to hinder, delay, or defraud." 28 U.S.C. § 3304(b)(1)(A). Defendants do not raise any issue of fact as to whether the transfers were intentionally fraudulent under 28 U.S.C. § 3304(b)(1)(A).

### *2. Constructive Fraud - 28 U.S.C. § 3304(b)(1)(B)*

"A constructive fraudulent transfer under the FDCPA is a transfer by a debtor 'whether such debt arises before or after the transfer is made,' that is made 'without receiving a reasonably equivalent value in exchange for the transfer . . . if the debtor . . . intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.'" *United States v. Forbes*, 740 F. Supp. 2d 334, 341 (D. Conn. 2010) (alterations in original) (quoting 28 U.S.C. § 3304(b)). As the Court explains above, Defendant Strevell transferred $159,046.00 to Defendant Childrose without receiving a reasonably equivalent value in return. Indeed, the Government's statement of material facts lists 159 instances of Defendant Strevell transferring money to Defendant Childrose, amounting to a total of $159,046.00.

9

Defendant Childrose does not deny that any of those transfers took place, nor does she deny that Defendant Strevell did not receive anything of reasonably equivalent value in exchange for the money transferred. Therefore, Defendant Childrose failed to raise an issue of fact as to whether the transfers were constructively fraudulent under 28 U.S.C. § 3304(b)(1)(B).

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Government's motion for summary judgment (Dkt. No. 45) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in the amount of $85,706.61[1] against Defendants Strevell and Childrose, jointly and severally, as well as post-judgment interest at the legal rate until paid in full; and the Court further

**ORDERS** that the Clerk of the Court close this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 6, 2018
      Albany, New York

_Mae A. D'Agostino_
U.S. District Judge

---

[1] $85,706.61 is the amount of the outstanding restitution balance, with post-judgment interest, that was owed by Defendant Strevell when the summary judgment motion was filed on February 2, 2018. *See* Dkt. No. 45-3 at 21. Credit toward the judgment amount will be given for any restitution payments made after the motion for summary judgment was filed and before the date of this Memorandum-Decision and Order.